Calvin G. **WRIGHT**; Jack **Critchfield**; Desert Forest Products, Inc., d/b/a Hutchinson, Carter Company, Plaintiffs–Appellants,

v.

**U.S. POSTAL SERVICE,**
Defendant–Appellee.

No. 93–55069.

United States Court of Appeals,
Ninth Circuit.

Submitted June 8, 1994 *.

Decided July 18, 1994.

---

1. This figure does not include the profit-sharing distribution.

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Brian S. Case, Case & Associates, Costa Mesa, CA, for plaintiffs-appellants.

Russell W. Chittenden, Asst. U.S. Atty., Los Angeles, CA, for defendant-appellee.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Calvin Wright and other public-works subcontractors appeal the district court's determination that the Contract Disputes Act, 41 U.S.C. §§ 601–613, eliminated subject-matter jurisdiction over their actions to establish and foreclose equitable liens against the United States Postal Service. We reverse.

## I.

In 1987, the United States Postal Service ("USPS") hired RCR General Contractors, Inc. to construct a post office in Victorville, California. RCR, in turn, subcontracted with Calvin Wright, Jack Critchfield, and the Hutchinson, Carter Company (the "subcon-

tractors") to perform various services for the project. RCR suffered financial difficulties, however, and was unable to pay the subcontractors as they fulfilled their contractual obligations. Ultimately, the USPS terminated RCR and completed the post office with another contractor.

RCR's sureties subsequently refused to pay the subcontractors for their completed work. As a result, the subcontractors filed suit in district court against the USPS, seeking to establish and foreclose equitable liens for the value of their services. The district court dismissed the actions for lack of subject-matter jurisdiction, concluding that the Contract Disputes Act precluded adjudication of subcontractor claims against the USPS. We conduct *de novo* review of this jurisdictional determination. *E.g., Concrete Tie, Inc. v. Liberty Constr., Inc. (In re Liberty Constr., Inc.),* 9 F.3d 800, 801 n. 2 (9th Cir.1993).

## II.

■ Section 401(1) of the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101–5605, provides that the USPS shall have the power "to sue and be sued in its official name." *Id.* § 401(1). This provision "constitutes a broad waiver of [the] USPS's sovereign immunity, and subjects it to 'liability ... the same as any other business.'" *Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985) (quoting *Franchise Tax Bd. v. United States Postal Serv.,* 467 U.S. 512, 520, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984)).

■ The PRA's waiver of immunity "should be liberally construed." *Franchise Tax Bd.,* 467 U.S. at 517, 104 S.Ct. at 2552 (quotation omitted).

[W]hen Congress establishes ... an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather, if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.

*Id.* at 517–18, 104 S.Ct. at 2552 (quoting *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). As a general matter, therefore, sovereign immunity does not shield the USPS from the subcontractors' actions to establish and foreclose equitable liens. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 140–41, 83 S.Ct. 232, 236–37, 9 L.Ed.2d 190 (1962) (describing the "equitable principle" that "laborers and materialmen ha[ve] a right to be paid out of the [government contract retention] fund"); *Henningsen v. United States Fidelity & Guar. Co.,* 208 U.S. 404, 410, 28 S.Ct. 389, 391, 52 L.Ed. 547 (1908) (noting that the government had "equitable obligations to see that the laborers and supply men were paid"); *Active Fire Sprinkler Corp. v. United States Postal Serv.,* 811 F.2d 747, 754 (2d Cir.1987) (explaining that "equitable rights held by subcontractors as against the USPS, which may have been unenforceable where sovereign immunity existed, became enforceable upon immunity being waived").

The district court concluded, however, that the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, overrides the PRA and precludes subcontractors from pursuing equitable claims in district court. Because we hold that this conclusion is based on the legally-incorrect premise that the CDA provides the exclusive basis for litigation of claims relating to government contracts, we reverse the district court on this point.

## A.

■ The CDA, "which Congress enacted to standardize the previously uncoordinated systems for resolving contract disputes with the government," *Liberty Constr.,* 9 F.3d at 801, "applies to any express or implied contract ... entered into by an executive agency for ... the procurement of services [or] the procurement of construction, alteration, repair or maintenance of real property," 41

U.S.C. § 602(a). Under the CDA, "[a]ll claims by a contractor against the government relating to a contract [within the scope of the statute] ... shall be submitted to the contracting officer for a decision." *Id.* § 605(a). Contractors may appeal the decision of the contracting officer to the Court of Federal Claims, *id.* § 609, or an agency board of contract appeals, *id.* §§ 606, 607.

According to the district court, this statutory scheme eliminated rights possessed by the subcontractors under the PRA:

> The legislative history of the CDA "strongly suggests [that] Congress' understanding [was] that the [CDA] would preempt the entire field of government contract remedies...." *Consumer Solar Electric v. U.S. Postal Service,* 530 F.Supp. 702, 705 (C.D.Cal.1982). Furthermore, the CDA is a more recently enacted and specific statute than the PRA. In general, a precisely drawn statute preempts a more general one.
>
> The CDA prevents contractors from bringing contract claims against the government in the federal district courts.... The two purposes behind the CDA are the facilitation of efficient contract dispute resolution and the formation of government contracts; allowing subcontractors to maintain suit against the Postal Service in district court would defeat these goals. An opposite ruling would lead to the anomalous result that subcontractors could litigate in district court while the contractors could not. Therefore, the Court holds that the Contract Dispute[s] Act divests this Court of subject matter jurisdiction from hearing claims from subcontractors against the Postal Service.

(citations omitted). In so holding, the court followed the decisions of three other district courts, all of which concluded that the CDA's preemption of district court jurisdiction extends to subcontractor claims. *See Biebel Bros. v. United States Postal Serv.,* 772 F.Supp. 1117, 1118 (E.D.Mo.1991) (the CDA preempts a subcontractor's quantum meruit action against the USPS for failure to obtain a Miller Act security bond); *Carroll v. United States Postal Serv.,* 764 F.Supp. 143, 144–45 (E.D.Mo.1991) (same); *Eastern, Inc. v.*

*Shelly's, Inc.,* 721 F.Supp. 649, 650–53 (D.N.J.1989) (the CDA preempts a subcontractor's action against the USPS for an equitable lien).

### B.

Despite its logical appeal, the district court's analysis (like the analysis of the other district courts to consider this issue) is flawed because it presumes that the CDA "pre-empt[s] the entire field of government contract remedies." Although the court arguably was justified in making such a presumption at the time it rendered its decision, *see Prefab Prods., Inc. v. United States Postal Serv.,* 600 F.Supp. 89, 91 (S.D.Fla.1984) ("the Contract Disputes Act ... pre-empts whatever jurisdiction federal district courts previously had under [the PRA] and confers exclusive jurisdiction of contract claims against the Postal Service in the United States Court of Claims"); *Consumers Solar Elec. Power Corp. v. United States Postal Serv.,* 530 F.Supp. 702, 706 n. 3 (C.D.Cal. 1982) ("the Contract Disputes Act implicitly repeals [the sovereign immunity waiver] of the Postal Reorganization Act ... as to contract claims against USPS"); *but see North Side Lumber Co. v. Block,* 753 F.2d 1482, 1486 (9th Cir.) (the CDA does not "divest[ ] the district court of jurisdiction over all actions relating to the contracts brought under any head of jurisdiction"), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985), the law of the Ninth Circuit now compels the opposite conclusion.

In *Concrete Tie, Inc. v. Liberty Construction, Inc. (In re Liberty Construction, Inc.),* 9 F.3d 800 (9th Cir.1993), we recently considered a highly analogous question and concluded that the CDA did not preempt a contractor from bringing an indemnification action against the Small Business Administration ("SBA") under the "sue and be sued" provision of the Small Business Act, 15 U.S.C. § 634(b)(1). *Id.* at 801–02. In so holding, we rejected the SBA's contention that the CDA, which withdrew a statutory provision (the Tucker Act) granting independent federal jurisdiction over some government contract claims, nullified other jurisdic-

**1430**

tional bases for contract-related suits against the agency:

> ... The government would have us broadly interpret [the statute] as withdrawing all district court jurisdiction over contract claims within the scope of the CDA, regardless of independent statutory grants of jurisdiction such as the "sue and be sued" provision of the Small Business Act.

> We disagree.... In *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1486 (9th Cir.1985), we interpreted the CDA's amendment of the Tucker Act narrowly, holding that it withdrew district court jurisdiction under the Tucker Act over contract claims for damages not exceeding $10,000, but otherwise left existing jurisdiction intact.... We ... [conclude] that claims against the United States may be entertained by the district courts, regardless of the amount sought, so long as there exists a basis for jurisdiction independent of the Tucker Act. Accordingly, we hold, on the authority of [the "sue and be sued" provision and cases interpreting it] ..., that the district court has subject matter jurisdiction over [the] claims against the SBA.

*Id.* (citation and footnotes omitted).

■ *Liberty Construction* is fatal to the district court's reasoning in this case. The Small Business Act's "sue and be sued" provision, 15 U.S.C. § 634(b)(1), is virtually identical to the PRA's "sue and be sued" provision, 39 U.S.C. § 401(1). Although the Small Business Act's provision does include a grant of jurisdiction to the federal courts that is absent from 39 U.S.C. § 401(1), that deficiency is remedied by 39 U.S.C. § 409(a), which grants the district courts original but not exclusive jurisdiction over actions by or against the USPS. There is accordingly no basis for differentiating between the two statutory schemes.

The USPS attempts to distinguish *Liberty Construction* on the ground that the CDA specifically lists the Postal Service, but not the SBA, as an "executive agency" within the scope of the statute. *See* 41 U.S.C. § 601(2). In *Liberty Construction,* however, we clearly assumed that the CDA did in fact encompass

the SBA's contracts, *see Liberty Constr.,* 9 F.3d at 801 (analyzing the preemption issue in terms of whether "district court jurisdiction [exists] over contract claims *within the scope of the CDA* ") (emphasis added); the USPS's argument is thereby stripped of its force.

Therefore, applying *Liberty Construction* and the Supreme Court's admonition that the PRA's waiver of immunity be "liberally construed," *Franchise Tax Bd.,* 467 U.S. at 517, 104 S.Ct. at 2553, we hold that the CDA does not preempt subcontractor actions against the USPS.

**III.**

■ As a result of our determination that the CDA does not preempt all subcontractor actions against the USPS, we must now consider whether the PRA's "sue and be sued" provision and its accompanying jurisdictional grant actually provide an "independent statutory grant[ ] of jurisdiction," *Liberty Constr.,* 9 F.3d at 801, for the equitable lien actions in this case. We conclude that they do.

The Miller Act, 40 U.S.C. §§ 270a–270f, requires qualifying public-works contractors to post "payment bond[s] with a surety or sureties ... for the protection of all persons supplying labor and material in the prosecution of the work provided for in [the government] contract...." *Id.* § 270a(a)(2). If a qualifying contractor fails to pay a subcontractor, the subcontractor may sue the surety to recover under the bond. *Id.* § 270b.

The PRA expressly provides that the Miller Act's bond remedy "shall apply to the Postal Service." 39 U.S.C. § 410(b)(4)(B). Citing this incorporation of the Miller Act, the USPS contends that, even if the CDA does not eliminate jurisdiction over subcontractor actions, the Miller Act itself limits the remedies available to subcontractors and thereby precludes any actions to establish equitable liens. We disagree.

In considering precisely this issue several years ago, the Second Circuit "conclude[d] that the Miller Act is not an exclusive remedy as to [the] USPS since the [PRA] has waived USPS's immunity from suit." *Active*

*Fire,* 811 F.2d at 754. The court's well-reasoned analysis is worth repeating:

> ... [The USPS] cite[s] a long series of cases that characterize the Miller Act as the only remedy for subcontractors in a government building contract and which suggest that no remedy for the subcontractors exists as against the United States....
>
> [However,] none of th[ose] cases ... involved a government agency whose immunity had been waived. In those cases the Miller Act offered the sole remedy because no lien could attach to property held by the United States government. Herein, the United States has waived its immunity [in the PRA] and, by doing so, the United States has accepted the possibility of liability being imposed against the agency. Prior to the waiver of immunity, subcontractors possessed an equitable right ..., but apparently lacked a remedy due to immunity. *Any equitable rights held by subcontractors as against [the] USPS, which may have been unenforceable where sovereign immunity existed, became enforceable upon immunity being waived.*
>
> [The USPS's] reading of the Miller Act conflicts with the purpose behind its enactment as evidenced by its function. The Act provided recourse for subcontractors and suppliers, who had been left without a remedy as to the government under then-existing law when the general contractor became insolvent. Since the plain language of the Miller Act relates only to the creation of a remedy for subcontractors as against sureties, as we construe it, it *does not limit [the subcontractor]'s rights vis-a-vis the government herein.*

*Id.* at 754–55 (emphasis added) (citations omitted). *Accord Kennedy Elec. Co. v. United States Postal Serv.,* 508 F.2d 954, 957 (10th Cir.1974) (holding that the Miller Act does not preclude a subcontractor's equitable lien action against the USPS); *see also United Elec. Corp. v. United States,* 647 F.2d 1082, 1084, 227 Ct.Cl. 236 (explaining that, in *Kennedy,* "[t]he broad, unlimited legislative declaration that the Postal Service could 'be sued' left the Tenth Circuit free to apply doctrines applicable to private persons, include principles of restitution"), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981).

*Active Fire* is persuasive. Nothing in the Miller Act evinces a legislative intent to limit remedies available to subcontractors. To the contrary, the Act *expands* upon the remedies previously available to government subcontractors. We conclude, therefore, that the subcontractors properly may assert in district court their equitable lien claims.[1]

## IV.

The district court erred by holding that the CDA nullifies the PRA's waiver of sovereign immunity in this case. Under *Liberty Construction,* the subcontractors may assert any claim against the USPS for which they have an independent jurisdictional basis, regardless of whether or not the subcontractors could also assert those claims under the CDA. Because the Miller Act does not prevent the subcontractors from bringing equitable lien actions against the USPS, the subcontractor litigation was properly before the district court under 39 U.S.C. § 409(a). We reverse the court's dismissal and remand for a trial on the merits.

**REVERSED and REMANDED.**

---

1. As an aside, the USPS asserts that the Miller Act itself preempts the PRA's waiver of sovereign immunity. We reject this argument for the same reasons the Second Circuit rejected it in *Active Fire:*

    > We can find no evidence of a clear intent on the part of Congress that the incorporation of the Miller Act remedy into the PRA was to serve to narrow the waiver contained in the "sue or be sued" language of section 401 of the PRA. Indeed, ... we construe the incorporation of the Miller Act into the PRA as an addition to any remedies made available by means of the waiver of immunity.

    *Active Fire,* 811 F.2d at 752 (footnote omitted).