**QUALITY MECHANICAL CON-
TRACTORS, INC., a Nevada
Corporation, Plaintiff,**

v.

**MORELAND CORPORATION, a California corporation, Las Vegas VA 1, LLC; United States Government, Department of Veterans Administration; American National Insurance Company, Fidelity and Deposit Company of Maryland; R.M.A., Inc., a Utah corporation; and R.M. Anderson & Sons, a Utah joint venture, Defendant.**

**No. CV–S–98–00414–PMP (RJJ).**

United States District Court,
D. Nevada.

Sept. 3, 1998.

Richard L. Peel, Whitehead & Peel, Henderson, NV, Brian S. Case, Case & Baker, LLP, Costa Mesa, CA, for plaintiff.

Steven W. Myhre, AUSA, Kathryn E. Landreth, U.S. Attorney, Office of U.S. Attorney, Las Vegas, NV, for defendant.

*ORDER*

PRO, District Judge.

Presently before the Court is Defendant United States Department of Veterans Affairs' ("VA") Motion to Dismiss or for Summary Judgment (# 30) filed on May 15, 1998. On May 19, 1998, the VA filed an Erratum to its Motion to Dismiss or for Summary Judgment (# 32). Plaintiff Quality Mechanical Contractors, Inc. ("Quality") filed a Response/Opposition (# 44) on June 9, 1998. On June 26, 1998, the VA filed a Reply (# 56). On July 2, 1998, Quality filed a Notice of Errata Re: Plaintiff's Response/Opposition (# 59).

## I. Factual Background

Quality was a subcontractor on the Department of Veterans Affairs ("VA") Las Vegas Ambulatory Care Center in Las Vegas, Nevada ("the Project"). Defendants Moreland Corporation ("Moreland") and/or Las Vegas VAI, L.L.C. ("Las Vegas L.L.C.") own the project, and the VA leases it for use as an outpatient client. Quality claims that it is owed $1,744,712.87 for its work on the Project and has brought suit against the VA, Moreland, Las Vegas L.L.C., RMA Corporation ("RMA"), various insurance and surety companies and R.M. Andersons & Sons, Inc. seeking recovery. As to the VA, Quality claims that it is entitled to recovery under equitable lien and unjust enrichment theories.

The parties involved built the Project to suit the needs of the VA. Moreland hired RMA as the prime contractor, and RMA in turn hired Quality to perform subcontracting plumbing and heating/air conditioning work on the Project. The VA did not require RMA to post a bond in favor of the subcontractors under the Miller Act.[1] The nature of the VA's involvement in the construction of the Project is disputed.

Quality claims that the VA's was heavily involved in construction, while VA maintains that it is just a lessee and had minimal involvement with the construction. According to Quality, the VA was active in soliciting offers for the construction of the Project. (Burnthon Decl. ¶ 3, attached to Pl.'s Opp'n.) In contrast, the VA insists that the VA did not negotiate with any contractors for construction of the Project. (Hill Decl. ¶ 4, attached to Def.'s Mot. To Dismiss.)

Quality also contends that the VA was actively involved with the day to day process of construction. The VA appointed a resident engineer whose duties included acquiring contract specifications, holding construction meetings, inspecting work, and issuing change orders. (Burnthon Decl. ¶ 4. and attached exhibits.) According to Quality, the VA also followed its normal contract procurement procedures and contract regulations, was heavily involved in the Project's design, and issued numerous change orders. (Burnthon Decl. ¶ 4.) While not directly disputing Quality's contentions, the VA claims that it did not review the construction contracts between Moreland and any of the contractors, nor does it even have a copy of any construction contract. (Hill Decl. ¶ 4.)

Quality finished its work in July 1998, and the VA began its occupancy of the Project in the summer of 1998 under a fifteen year lease.[2] (Hill Decl. ¶ 3.) Quality claims that RMA did not pay it for all the extra work it was required to complete. Moreover, Quality insists it was required to perform this extra work partially as a result of VA's action during the construction process. On November 25, 1997, Quality sent a letter to the VA notifying the VA that it had not been paid and would be requesting payment from the VA. (Letter from Spilsbury to Hill, Hayborn and Tyler of 11/25/97, Ex. 1, attached to Pl.'s Opp'n.) In the instant suit, Quality seeks an

---

**1.** The Miller Act provides that a contractor must provide a payment bond to protect parties providing labor or materials "[b]efore any contract for the construction, alteration, or repair of any public building or public work of the United States is awarded." 40 U.S.C.A. § 270a(a)(2) (West Supp.1998).

**2.** The VA states that the lease contains an option to renew for five years. (Hill Decl. ¶ 3.) Quality believes that the lease has a purchase option based on a description of the VA's agreement as a "lease/purchase" agreement in its change orders. (Ex. 4 attached to Burnthon Decl.) The parties have not yet engaged in discovery so the actual lease agreement is not part of the available documents in this case.

equitable lien on funds currently held by the VA as part of its lease obligation. It also seeks recovery for unjust enrichment that it claims occurred as a result of the VA enjoying the fruits of Quality's labor and the materials provided by Quality.

## II. Discussion

The VA seeks to dismiss Quality's claims against the VA for two reasons. First, the VA argues that the Court lacks subject matter jurisdiction. Second, the VA argues that the Court should dismiss or grant summary judgment on the claims because Quality fails to state a claim upon which relief can be granted.

### A. Motion to Dismiss for Lack of Jurisdiction

The VA contends that the Court lacks subject matter jurisdiction because Quality has not pled a waiver of sovereign immunity and because the United States has not waived immunity in this case. Quality counters that it adequately pled a waiver and that the Ninth Circuit Court of Appeals found that the United States has waived immunity.

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a Complaint for a lack of subject matter jurisdiction. Under the principle of sovereign immunity, the United States may only be sued where it has expressly consented to such suit by statute. *Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Therefore, whether the United States has consented to be sued is a question of this Court's subject matter jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). A suit against a federal agency which seeks relief against the sovereign is, in effect, a suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Accordingly, the principles of sovereign immunity apply to that agency. *Id.*

In considering whether the Court has subject matter jurisdiction, the Court may review affidavits and other evidence to resolve factual disputes on the issue of jurisdiction without converting the Defendant's Motion to Dismiss into one for summary judgment. *McCarthy*, 850 F.2d at 560; *see Capitol Indus.–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 n. 29 (9th Cir.1982); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979). Due to the limited jurisdiction of federal courts, the plaintiff bears the burden of proving that this Court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

#### 1. Pleading Requirements

In its Complaint, Quality alleged that it was entitled to an equitable lien because the Project was paid for with public funds, the VA had not required RMA to post a bond in Quality's favor as required by the Miller Act, and Quality had notified the VA of its right to payment. (First Am.Compl. at 6–7 ¶¶ 38–42.) Quality asserted federal question and diversity jurisdiction, but did not point to a statute that waives immunity. Consequently, the VA argues that this Court should dismiss Quality's claims against it. Quality argues that it has pled a waiver of sovereign immunity sufficient to satisfy the requirement of notice pleading by pleading a Miller Act violation, pleading the fact that the Project was built with federal funds, pleading notice to the VA, and requesting an equitable remedy.

This Court has previously stated that a "[t]he party suing the United States must point to an unequivocal waiver of sovereign immunity." *McMillan v. Department of Interior*, 907 F.Supp. 322, 325 (D.Nev.1995) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983)); *see also Malone v. Bowdoin*, 369 U.S. 643, 648, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). However, a party can plead federal jurisdiction implicitly in a complaint. 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 8.03(3) (3rd ed.1998). If the party alleges facts that if proved would establish jurisdiction, then the party has suf-

ficiently pled jurisdiction. *Id.; see also Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1211–12 (9th Cir.1980) (finding that allegations in plaintiff's complaint demonstrated federal jurisdiction even though plaintiff did not cite a federal statute). Therefore, if Quality's factual allegations mirror the facts needed for a statute that does waive immunity, this Court will not dismiss the Complaint because Quality did not specifically plead the statute that provides the waiver.

### 2. Waiver of Sovereign Immunity

Under the Miller Act, the United States must require a contractor to post a payment bond in favor of persons supplying labor and materials before awarding a contract for the construction of a public work. 40 U.S.C.A. § 270a(a) (West Supp.1998). If the contractor does not pay those supplying labor or materials, those people can bring suit on the bond in the name of the United States for their use. 40 U.S.C.A. § 270b.

In cases where the United States has failed to require the bond, laborers and materials providers have attempted to bring suit against the United States. However, courts have been reluctant to find that the United States waived its sovereign immunity in those cases. *Arvanis v. Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1289–1291 (7th Cir.1984) (finding that neither the Miller Act nor the Federal Tort Claims Act waived the government's sovereign immunity), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985); *United Elec. Corp. v. United States,* 227 Ct.Cl. 236, 647 F.2d 1082, 1084 (finding that a subcontractor could not take advantage of the Tucker Act's waiver of immunity for contract claims because the subcontractor was not in privity of contract with the United States), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981). These courts, however, were not happy with the result that left the subcon-

tractor without relief. The *Arvanis* court noted that the result was unjust, but found that the problem could only be addressed by Congress. 739 F.2d at 1293. The *United Elec. Corp.* court was similarly displeased with the result and found that the United States had a unenforceable obligation to pay the subcontractor. 647 F.2d at 1087.

Contrary to the above cases, the Ninth Circuit Court of Appeals recently addressed whether a subcontractor can bring suit for an equitable lien directly against the United States when the government did not require a Miller Act bond and found that the government had waived sovereign immunity. *Blue Fox, Inc. v. Small Business Admin.,* 121 F.3d 1357, 1359 (9th Cir.1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 2365, 141 L.Ed.2d 734 (1998). The court observed that the Administrative Procedures Act ("APA") waives sovereign immunity for suits "seeking relief other than money damages." *Id.* at 1360 (citing 5 U.S.C. § 702). The court then noted that "[t]he Supreme Court has found that monetary relief is available under the APA when it takes the form of specific relief rather than compensatory damages." *Id.* (citing *Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). The court found that Blue Fox was not a substitute for a loss, but was asking for specific relief because it was seeking "very thing to which it was entitled under the contract." *Id.* at 1361. Therefore, the United States had waived immunity and the district court had jurisdiction. *Id.*

Quality argues that its claims for an equitable lien and for unjust enrichment are the same as those in *Blue Fox* and *Blue Fox* mandates that this Court find that the United States has waived sovereign immunity. In contrast, the VA argues Quality's claims are distinguishable from the claim in *Blue Fox.*[3] The VA also argues that APA does not

---

3. The VA also makes four arguments that the Ninth Circuit Court of Appeals decided *Blue Fox* incorrectly. First, the VA claims that *Blue Fox* is contrary to a statement by the Supreme Court that subcontractors do not have enforceable rights against the United States. *United States v. Munsey Trust Co.,* 332 U.S. 234, 241, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). Second, the VA argues that only Congress can order

payment of funds from the United States treasury. Third, the VA insists that the *Blue Fox* court misconstrued the term "money damages." Fourth, the VA contends that *Blue Fox* is logically inconsistent. The Supreme Court has granted the government's petition for *certiorari. Department of the Army v. Blue Fox, Inc.,* —— U.S. ——, 118 S.Ct. 2365, 141 L.Ed.2d 734 (1998). However, as recognized by the VA, the decision of the

apply in this case because Quality has not filed an administrative claim.

### a. equitable lien

■ Quality seeks an equitable lien on the money that the VA owes the owner of the Project under its lease. This is precisely the claim at issue in *Blue Fox*. Like the subcontractor in *Blue Fox*, Quality is not seeking any compensatory damages, but is only asking for what it is allegedly due. 121 F.3d at 1361. The court specifically stated that an equitable lien is not a claim for money damages and that the APA waiver of sovereign immunity applied. *Id.*

The VA, however, contends there is no waiver in this case because Quality is really seeking relief from under a contract theory. In *Blue Fox*, the subcontractor had a claim for an equitable lien because the United States had an equitable duty to make sure that the subcontractors were paid. *Id.* at 1361–62. In the instant case, the VA is a lessee of the building, not the owner. Quality argues that the VA exercised so much control over the Project that it should be treated as if it were the owner. (Pl.'s Opp'n at 15–19.) Quality even states that the VA should be liable for incidents arising under the contract. (Pl.'s Opp'n at 16, 11. 16–18.)

From Quality's arguments, the VA concludes that Quality is seeking a contract remedy. The VA's conclusion is incorrect. Quality is not claiming that the VA should be treated as if it was in privity in contract with Quality. Therefore, Quality is not arguing for contract damages. Instead, Quality is arguing that the VA should be treated as if it was the owner and consequently, t had an equitable duty to make sure that Quality was paid. Whether this is a viable claim is a question of merit. Nonetheless, Quality is seeking is an equitable remedy.

### b. unjust enrichment

■ In addition to its equitable lien, Quality's Complaint states a cause of action for unjust enrichment. According to Quality, it completed various work on the Project, and the VA enjoys the benefits of Quality's work without having paid for the work. Quality claims the VA has benefitted in excess of $1,744,712.87, the amount that Quality alleges it is due. The VA maintains that this claim does not come within the APA waiver of sovereign immunity for claims other than money damages.

Quality seeks monetary compensation for the benefit the VA has received from Quality's allegedly unpaid work on the Project. The *Blue Fox* court stated that a plaintiff can request monetary relief when it takes the form of specific relief, rather than compensatory damages. 121 F.3d at 1361 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). This statement in *Blue Fox* does not clearly address whether monetary compensation for an unjust enrichment claim is included as acceptable monetary relief. Such compensation is not specific relief because Quality is not asking for the very thing is it entitled to under its contract. *Id.* at 1361. Instead, the monetary relief is a substitute for the benefit that the VA received. *See* 1 Dan B. Dobbs, *Law of Remedies* § 3.1 (2d ed.1993). On the other hand, the monetary relief for an unjust enrichment claim is also not compensatory damages because it is not a substitute for the plaintiff's loss. *See id.*

■ *Blue Fox* principally relied on *Bowen v. Massachusetts* as authority for its definition of monetary damages. 121 F.3d at 1360. In *Bowen*, the Supreme Court accepted the position of the District of Columbia Court of Appeals that the term monetary damages as used in the APA refers to compensatory relief. 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (quoting *Maryland Dep't of Human Resources v. Department of Health and Human Serv.*, 763 F.2d 1441, 1446 (D.C.Cir.1985)). This language suggests that any requests for relief other than a request for compensatory damages would be included in the APA waiver. However, the District of Columbia Court of Appeals also reviewed the legislative history of the APA and found that the Congressional reports stated that it intended the APA to

Ninth Circuit Court of Appeals is still binding upon this Court. Accordingly, the Court will not

address the arguments that *Blue Fox* is incorrect.

eliminate immunity for equitable actions for specific relief. *Maryland Dep't of Human Resources v. Department of Health and Human Serv.,* 763 F.2d 1441, 1447 (D.C.Cir. 1985). Thus, it is the specific and equitable nature of the claim that makes the claim fall within the waiver, not the fact that a claim is for other than compensatory damages. As discussed above, Quality's unjust enrichment claim is not for specific relief. Accordingly, it is not the type of claim contemplated by the APA, and the United States did not waive its sovereign immunity for that claim.

### c. failure to exhaust administrative remedies

The VA also argues that *Blue Fox* does not apply to this case because Quality has not exhausted its administrative remedies. However, the *Blue Fox* court did not state that the subcontractor had to exhaust any administrative remedies. Instead, the court found that the equitable lien attached as soon as the subcontractor notified the government that it had not been paid. *Blue Fox,* 121 F.3d at 1362. The VA does not state what procedures Quality should have followed. The VA can not simply state that Quality did not pursue its administrative remedies without explanation of the possible remedies because if no remedies exist, Quality can not be faulted for not taking advantage of them.

### B. Motion to Dismiss for Failure to State a Claim

■ The VA also claims that Quality fails to state a claim upon which relief can be granted as required by Federal Rule of Civil Procedure 12(b)(6). According to the VA, Quality can not state a claim for an equitable lien because the Miller Act does not apply unless the United States is a party to the construction contract. In addition, Quality can not state a claim because there is no res against which to impress an equitable lien.

In considering Defendants' Motion to Dismiss, the factual allegations of Plaintiffs' Complaint must be presumed to be true, and this Court must draw all reasonable inferences in favor of Plaintiffs. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Plaintiffs will ulti-

mately prevail, but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

#### 1. Miller Act

■ The VA argues that the Miller Act does not apply to this case because the United States is a lessee of the Project and must be a party to the construction contract for the Project to qualify as a public work under the Miller Act. Quality counters that the Project is a public work because United States funded the construction and was heavily involved in the construction. Both parties are suggesting that if the Miller Act applies, the United States had a duty to require the prime contractor to post a bond and Quality can obtain an equitable lien because the government breached that duty. However, even if the Miller Act applies, the United States does not have any obligation under the Act to require a bond. *Arvanis v. Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1289–90 (7th Cir.1984) (finding that the Miller Act imposes no affirmative obligation on the United States to require a bond), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985); *Blue Fox, Inc. v. United States Small Business Administration,* No. CIV. 95–612–FR, 1996 WL 293363 *4 (May 24, 1996), *rev'd in part and aff'd. in part,* 121 F.3d 1357 (9th Cir.1997), *cert. granted,* ── U.S. ──, 118 S.Ct. 2365, 141 L.Ed.2d 734 (1998).

■ The Ninth Circuit Court of Appeals implicitly agreed that the United States did not have a duty to require a bond in *Blue Fox Inc. v. Small Business Admin.,* 121 F.3d 1357, 1361 (9th Cir.1997). Noting that the district court had found that the Miller Act

did not impose a statutory duty for the government to require a bond, the court found that the subcontractor's right to an equitable lien came not from the statute, but from the United States' equitable duty to pay the subcontractor. *Id.* at 1361–62. Thus, whether the Miller Act applies is not relevant to whether Quality has a claim for an equitable lien. The important question is whether the VA still had an equitable duty to make sure Quality was paid even though it is only a lessee. Whether the Project is a public work might or might not be relevant to the VA's equitable duties. Neither party addresses the important question, and the Court can not on the record before it determine whether Quality states a viable claim for relief.

### 2. Res

The VA's final argument is that Quality can not state a claim for relief because the VA never had any res upon which Quality could impose a lien. The VA insists that it retains no property subject to the lien because it was not a party to the construction contract. Quality, in contrast, insists that the VA directed construction and paid for the work on the Project through its lease and the funds used to pay for the work constitute res that is subject to a lien.

In order for Quality to impose an equitable lien, there must be some property that is subject to the lien. Restatement of Restitution § 161, cmt. e (1937). In *Blue Fox,* the Army contracted with the Small Business Administration ("SBA") to build a facility to house a telephone switching system. 121 F.3d at 1359. The SBA in turn contracted with Verdan, and Verdan signed a tripartite agreement with the Army and the SBA. *Id.* Verdan then subcontracted with Blue Fox. *Id.* at 1360. Normally, the Army would have paid the SBA, and the SBA would administer the contract and pay Verdan. *Id.* at 1359. In *Blue Fox,* the SBA delegated the responsibility back to the Army, and the Army paid Verdan directly. *Id.* The court denied the plaintiff an equitable lien as to the SBA because the SBA never had possession or control of the any of the funds used to pay for the Blue Fox's work. *Id.* at 1363.

The VA bases its conclusion that it has no res for the lien on the fact that it was not a party to the construction contract and cites *Blue Fox* as support. The *Blue Fox* court, however, determined that the SBA did not have any res for the lien because the SBA never touched the money. If, as suggested by Quality, the money given by the VA to the owner went directly to construction of the Project, then the VA had possession of the funds or res in question. Of course, this conclusion assumes that the VA had an equitable duty to make sure that Quality was paid.

### III. Conclusion

Even though Quality did not specifically plead a waiver of sovereign immunity under the APA, it did request an equitable lien. Since the APA waives immunity for such claims, Quality has adequately pled sovereign immunity, and this Court has jurisdiction over the equitable lien claim. This Court does not, however, have jurisdiction over Quality's unjust enrichment claim because that claim is not included in the APA's waiver of sovereign immunity.

The VA's Motion to Dismiss for failure to state a claim must fail because whether the Miller Act is applicable to this case is not determinative of whether Quality is entitled to an equitable lien. The question of the VA's equitable duty to make sure Quality was paid remains. Also, issues of fact exist concerning whether the VA had possession of the res on which Quality now seeks to impress an equitable lien.

IT IS THEREFORE ORDERED that Defendant United States Department of Veterans Affairs' Motion to Dismiss or for Summary Judgment (# 30) is GRANTED as to Quality's unjust enrichment claim, but is DENIED as to Quality's equitable lien claim.